## SNIDER v YOUNGSTOWN (city)
Ohio Appeals, 7th Dist, Mahoning Co
No 2395. Decided June 24, 1938

232

John Ruffalo, Youngstown, for appellant.
William E. Lewis, Assistant Law Director,
Youngstown, for appellee.

## OPINION

By NICHOLS, PJ.

Nanie Snider filed her action against city of Youngstown for damages for personal injuries received by her when struck by a heavy stone or rock which was hurled by the force of blasting done by the city in the construction of a playground or park in the city on September 14, 1935.

The city answered, admitting its corporate capacity and averring that at the time of plaintiff's injuries it was engaged in a governmental function in the building and constructing of a baseball and recreation field in the vicinity of Pointview Avenue and that the petition of plaintiff does not set forth sufficient facts to constitute a cause of action against the defendant.

The cause came on for trial before the court and jury, and at the conclusion of plaintiff's evidence motion was made by defendant for directed verdict in its favor, which motion was sustained by the trial court and verdict directed in favor of the city, upon which judgment was subsequently entered. Appeal on questions of law is prosecuted to this court by the plaintiff below.

The facts in this case, as developed from the evidence of plaintiff and agreed to between the parties, are as follows:

"* * * plaintiff, a married woman 25 years of age, resides at 1647 Pointview Avenue in the city of Youngstown. Pointview Avenue is a duly dedicated public highway extending in substantially easterly and westerly directions. Pointview Avenue is a dead-end street at its westerly terminus. The city of Youngstown, on the 14th day of September, 1935, through its employees, was engaged in the construction of a playground in an empty field just beyond the westerly terminus of Pointview Avenue. The home of this plaintiff was situated on the south side of Pointview Avenue and was the third house up from the westerly terminus of Pointview Avenue, on the south side of the street. The home of Mrs. York, is 1643 Pointview Avenue, situated on the same side of the street as the Snider home and immediately west of the same. On the morning in question at about 11:00 A. M., Mrs. Snider was conversing with Mrs. York at the foot of the back steps of Mrs. York's home, which was a point about 200 to 300 feet east of the point where the city of Youngstown was doing the construction work. At the time above mentioned, a blast of dynamite was set off by the city employees, throwing stones and debris into the air, one of which stones came down and struck Mrs. Snider, causing certain personal injuries to her.

"The evidence submitted on behalf of the plaintiff further indicated that this was the first blast of dynamite set off by the city in the construction of this playground. That no notice or warning was given to the appellant by the appellee that such blast was to be set off, so that she might seek a place of safety, and that no precautions were taken to prevent stones from being hurled into the air and toward this appellant."

In the brief of counsel for appellee it is said:

"The plaintiff did not base her action on the failure of the city of Youngstown to observe the mandatory provisions of §3714 GC, nor is there any allegation in the petition of the plaintiff charging the defendant with the maintenance of a nuisance."

The specific allegations of plaintiff's petition, in brief, are as follows:

First, in causing a blast or explosion to occur at said place, when it knew that large pieces of stone or rock or other material would be forcibly hurled through the air so as to strike plaintiff, or liable to do so; second, in failing and neglecting to apprise plaintiff of the purpose and intention to blast dynamite; third, in failing and neglecting to guard against the forcible discharge of stones as a result of said blasting operation; fourth, in causing and permitting said blasting to be done at the time and place; and fifth, in causing and permitting explosives to be used in blasting operations in such close proximity to persons and homes as to hurl stones and other materials forcibly through the air at distance of 200 to 300 feet and as to strike and injure plaintiff.

The trial court sustained defendant's motion for directed verdict on the ground that the evidence disclosed that at the time of

plaintiff's injuries the city was engaged in the performance of a governmental function; that under authority of the cases of **Hutchinson v City of Lakewood, 125 Oh St 100, 180 N. E., 643** and **City of Cleveland v Walker, Admx. 52 Oh Ap 477,** there was no liability against the city.

It may be said to be definitely settled in Ohio that in the construction and maintenance of a park for the use and benefit of the general public, a municipality acts in a governmental rather than a proprietary capacity. **Selden v City of Cuyahoga Falls, 132 Oh St 223,** paragraph "1" of the syllabus.

It is likewise settled that while acting in such governmental capacity a municipality incurs no liability in tort for common-law negligence. Selden v City of Cuyahoga Falls, supra, paragraph "2" of the syllabus.

It may be further said that it is now settled that the provisions of §3714 GC, requiring a municipality to keep its public grounds free from nuisance is in derogation of the common law, and that such provision does not by implication impose liability for negligence not involving nuisance. Selden v City of Cuyahoga Falls, supra paragraphs "4" and "5" of the syllabus.

The syllabus in the case of **Hutchinson v City of Lakewood, 125 Oh St 100, 180 N. E. 643,** being one of the cases upon which the trial court relied in directing the verdict for defendant, is as follows:

"The **construction** of a sewer by a municipality is a governmental function, and no liability arises against such municipality, in the absence of statute, for **negligence** in the performance of that function."

We have emphasized the words "construction" and "negligence" and call attention to the fact that this syllabus does not hold that no liability exists against the city for **nuisance** in the construction of a sewer in an established city street.

It is true that the allegations of plaintiff's petition allege negligence upon the part of the city, but if these allegations and the facts proven thereunder, as above set forth, in fact constitute a nuisance it is not material that the plaintiff in her petition did not allege the conclusion that the facts constituted a nuisance.

In a proper case it would be the duty of the trial court to define in its charge to the jury the term "nuisance" and it would be for the jury to determine whether the facts established by plaintiff were such as to constitute a nuisance as so defined by the court. If, however, the facts established by plaintiff amounted only to negligence not involving nuisance, then the trial court properly would for that reason direct a verdict for the defendant upon its motion made at the conclusion of plaintiff's case.

The liability for tort against an Ohio municipality acting in a governmental capacity arises solely under the provisions of §3714 GC, which is strictly construed because in derogation of the common law. This section provides that a municipality must keep its public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts open, in repair, and free from nuisance. It seems clear that its streets, sidewalks, and public grounds, which latter include its public parks, must have come into existence before they can be kept open, in repair, and free from nuisance. Strictly construing the provisions of the section, no liability against the municipality could exist under the facts in this case, because the public park had not yet come into existence but was only in the course of construction. For this reason the petition did not state a cause of action, and the agreed statement of facts is insufficient to base liability against the city; hence the Common Pleas Court did not err in sustaining defendant's motion for directed verdict.

We prefer not to base our holding upon either of the cases relied upon by the lower court. The maintenance of streets in a municipality is a governmental function, yet liability exists under §3714 GC, if the city causes, maintains or permits a nuisance to exist in its established street. In Hutchinson v Lakewood, supra the sewer was being constructed in a public street at the time plaintiff's property was damaged. We have been unable to bring ourselves into accord with the decision in that case, because we believe the city was there causing and permitting a nuisance in its public street. We have examined the briefs filed by the parties in the Supreme Court and are amazed to find that the question of nuisance was not raised and hence was not considered by the court. The syllabus says nothing about nuisance but only holds the city not liable for negligence.

In our opinion the decisions of the Supreme Court in **City of Portsmouth v Mitchell Manufacturing Co, 113 Oh St 250,**

and *City of Salem v Harding, 121 Oh St 412*, are sustained upon the ground that in each case the city was creating or maintaining a "nuisance" upon its public grounds in violation of §3714 GC. In the opinion in the Portsmouth case it is clearly stated the facts pleaded and proven show that the city was maintaining a nuisance in the street contrary to the provisions of §3714 GC.

In Salem v Harding, supra, liability against the city while acting in a **governmental capacity** is recognized because by the negligence of its board of health a **nuisance** was created. See paragraph "2" of the syllabus.

The writer of the opinion in the case of Hutchinson v City of Lakewood, supra, states therein as follows:

"The same doctrine that the construction of sewers by a city is the exercise of a governmental function was carried into the syllabus of the case of City of Salem v Harding, supra, but both the judgment and the syllabus of that case are grounded upon fact that by **the negligence of the board of health in making changes in the sewer a nuisance had been created.** Upon the logical theory of governmental powers, as well as upon case adjudication, this is the correct rule. 19 Ruling Case Law, 1108; 6 McQuillin on Municipal Corporations (2nd Ed.) 927." (Emphasis ours).

In Selden v City of Cuyahoga Falls, supra, the Supreme Court, in its opinion at p 226, says:

"Of course it must be conceded that the elements of negligence and nuisance frequently coexist, but the terms are not synonymous. It has been said that negligence is a failure to use such care as persons of ordinary prudence are accustomed to exercise under the same or similar circumstances, while a nuisance is that which causes hurt, inconvenience, annoyance, or damage to the rights of another or the public. The latter term is derived from the French word 'nuire,' meaning to do hurt or annoy, and does not rest upon the degree of care used, but upon the injury done, irrespective of the care exercised. 30 O. Jur. 310; 20 Ruling Case Law, 381; 46 Corpus Juris, 663."

In the case of **Louden v The City of Cincinnati et, 90 Oh St 144,** it is held in the first syllabus:

"1. The use of high-power explosives in making excavations of rock and earth is a lawful method of accomplishing that purpose, but where dirt and stone are thrown by the force of the blast upon the property of another, or where the work of blasting is done in such proximity to adjoining property that regardless of the care used the natural, necessary or probable result of the force of the explosion will be to break the surface of the ground, destroy the buildings, and produce a concussion of the atmosphere, the force of which will invade the adjoining premises, injuring the buildings thereon and making them unfit and unsafe for habitation, the person or corporation making use of such explosives will be liable for the damage proximately and naturally resulting therefrom, irrespective of the question of negligence or want of skill in the blasting operations."

In the opinion of the Supreme Court in the case of **Railroad Co v Carr, 38 Oh St 453,** it is stated:

"An actionable nuisance is defined by Mr. Cooley in his work on Torts, to be anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights; and, on page 566 he says: 'As the definition assumes the existence of wrong, those things which may be annoying and damaging, but for which no one is in fault, are not to be deemed nuisances, though all the ordinary consequences of nuisances may flow from them. And Mr. Addison, in his work on Torts (Dudley and Baylies' ed. p. 3), says, 'A man may however, sustain grievous damage at the hands of another; and yet, if it be the result of inevitable accident or a lawful act done in a lawful manner, without any carelessness or negligence, there is no legal injury, and no tort giving rise to an action for damages.' Such cases are within the rule of damnum sine injuria."

Unquestionably blasting with high-powered explosives can not be said to be unlawful under all circumstances. The weight of authority seems to be that blasting, without reference to the particular locality in which it is carried on, is not so intrinsically dangerous as to be ipso facto a nuisance, but the weight of authority is to the effect that blasting with high-powered explosives in a city or town near enough to the property of others to do injury is a nuisance, unless proper precautions are taken to prevent injury to such property, or to the persons of others ignorantly coming within its reach.

While a city acting in a governmental capacity is not liable for negligence, it seems clear to this court that when its negligence amounts to a nuisance it is liable to persons injured thereby in the instances provided for in §3714 GC.

According to Mr. Cooley, to whose work we have hereinbefore referred, fault upon the part of the one doing a lawful act is necessary to constitute the act a nuisance, and hence we think it must have been contemplated by the Legislature in enacting §3714 GC, that a city would be liable not only in its proprietary but in its governmental capacity, if by reason of fault upon its part an act is committed which amounts to a nuisance. In the case we have here the city was at fault in the use of high-powered explosives, or at least a question was presented for the jury under proper instructions of the court. It must be kept in mind that §3714 GC, in providing liability against the city for nuisance, makes no exception because the city is acting in a governmental capacity. Indeed, the section would be meaningless unless it applied to a city acting in its governmental capacity because under the overwhelming weight of authority a municipal corporation is liable as a private corporation for negligence when acting in its proprietary capacity. When acting in a proprietary capacity a municipal corporation has divested itself of immunity from liability as a branch of government and it may no longer bring itself within the theory upon which the government is immune from liability, that is, that "the king can do no wrong."

From 19 Ruling Case Law, 1109, §391, we quote:

"When a function is undertaken by a municipality in its private or proprietary capacity, for the profit, benefit or advantage of the corporation or of the people who compose it, rather than for that of the public at large, it is liable for the negligence of its employees to the same extent and under the same conditions as a private corporation, * * *."

The cases cited under this section are so numerous as to leave no doubt of the universal application of the rule. irrespective of liability imposed by §3714 GC.

We further quote from 28 O. Jur. 950, §601.

"In the development of the principles governing municipal tort liability, a distinction has been made with respect to the character of the act in connection with which the injury in question occurs, as governmental or as proprietary; and it is now well established in Ohio, as elsewhere, as a general rule, subject to some exceptions, that, in the absence of statutory provision to the contrary, r municipality is not liable for injuries occurring in connection with matters relating to its governmental functions, but is liable for torts committed in connection with the exercise of its private or proprietary powers and functions under substantially the same rules and principles which govern the liability of private corporations and individuals, * * *."

From the superficial reading of the opinion of the Supreme Court in the case of **Wooster v Arbenz, 116 Oh St 281, 156 N. E. 210, 52 A. L. R. 518**, one is likely to conclude that Ohio is committed to the doctrine that there is no liability upon the part of a municipality in actions for tort, if the function exercised by the municipality at the time of the injury to the plaintiff was a governmental function. This is the exact language of the Chif Justice on p 233 of **116 Oh St**, but further in the opinion it is stated:

"The state of Ohio has always recognized its obligation to keep the public ways open, and has delegated that duty to municipalities so far as streets and alleys within municipalities are concerned, and, further recognizing the public character of that obligation, has enjoined by §3714 GC, upon municipalities an obligation to keep them open, in repair, and free from nuisance. This duty was for the first time imposed by legislation on May 3, 1852 (50 Ohio Laws, p. 244, §63), in practically the identical language in which that obligation is now couched in §3714 GC. By that enactment the Legislature of Ohio has removed all doubt as to the public character of streets and alleys within municipalities, and by the same token it has become firmly established that the maintenance of streets, alleys, and other highways is the performance of a governmental function. By virtue of §3714 GC the duty has been enjoined upon municipalities to keep streets and alleys open, in repair, and free from nuisance, and it follows from that that they may be made to respond in damages for a failure so to do."

We fail to see that the decision in the case of **City of Cleveland v Walker, Admx,**

52 Oh Ap 477, is any authority for the trial court directing a verdict for the defendant in the case we have under consideration. The decision in that case is in entire accord with the position we take in this case, it being stated in the syllabus as follows:

"1. A municipality which maintains a public park near its natural state for the welfare of the public is performing a governmental function, and is not liable for common-law negligence resulting in the death of children who fell through the ice while playing on the park pond, as they were invitees only in the sense that they exercised a privilege granted to the public, and under such circumstances there being no nuisance maintained, the municipality was under no duty to provide a guard for their protection.

"2. In such case the drowning being due to weakened ice, caused by rising temperature, such hazard was created by nature, and did not constitute a nuisance within the meaning of §3714 GC."

In that case the Cuyahoga county Court of Appeals very clearly recognized that the city, in the performance of a governmental function, was not liable for common-law negligence not involving nuisance, but as clearly recognized the liability of the city if the hazard created or maintained had been such as to constitute a nuisance.

Sec 3714 GC, requires the municipal corporation not only to keep its streets in repair and free from nuisance but also requires the municipality to keep its public grounds free from nuisance, and its liability in tort occasioned by a failure to comply with §3714 GC, in the exercise of a governmental function has universally been recognized in this state, although the section has been strictly construed because in derogation of the common law.

Not simply because the city was acting in a governmental capacity at the time it caused injuries to plaintiff, but because neither the petition of plaintiff nor the proof shown in the agreed statement of facts constitute a cause of action under §3714 GC, the judgment of the Common Pleas Court must be and the same is affirmed, it appearing from the petition and agreed facts that the city has not caused, maintained or permiteed a nuisance in or upon an established and existing park or other public ground of the city.

Judgment affirmed.

CARTER and BENNETT, JJ, concur, in the judgment.