C. Jackson **REGISTER** and Anna Maud Register, his wife, Plaintiffs,

v.

H. **BURTON ELLIOTT, INC.**, a corporation of the State of Delaware, and the Camden-Wyoming Sewer & Water Authority, a corporation of the State of Delaware, Defendants.

Superior Court of Delaware.

Kent.

Jan. 26, 1967.

Supplemental Opinion April 25, 1967.

Roy S. Shiels, of Brown & Brown, Dover, for plaintiffs.

Roger D. Kelsey, of Schmittinger & Rodriguez, Dover, for defendant, Camden-Wyoming Sewer & Water Authority.

STIFTEL, President Judge.

Plaintiffs seek recovery for damage to their home allegedly caused by the negligence of H. Burton Elliott, Inc., and the Camden-Wyoming Sewer and Water Authority. The Authority is a body politic

and corporate organized pursuant to 16 Del.C.Ann., Ch. 14, which authorized the formation of such authorities by municipalities for the, purpose of constructing sewer and/or water facilities.

Plaintiffs allege that Elliott was engaged by the Authority to construct sewer facilities in the towns of Camden and Wyoming, that pursuant to that contract, Elliott made excavations in the vicinity of plaintiffs' home, that in making these excavations Elliott used certain heavy equipment which caused severe and intense vibrations in the ground surrounding plaintiffs' house, and that said house was severely damaged by the vibrations. They assert that the presence of these vibrations was made known to Elliott and the Authority but that they refused to discontinue the use of the vibration-producing equipment. Plaintiffs also claim that on one occasion employees of Elliott drove some construction machinery into the front steps of plaintiffs' house and damaged them severely.

Plaintiffs say that the Authority was negligent, firstly, in that it permitted Elliott to continue to use the vibration-producing equipment after notice that such usage was causing damage to plaintiffs' house and secondly, that it did nothing to preclude unnecessary and avoidable damage to plaintiffs' house resulting from the sewer construction activities. Thus, even though the Authority was not directly engaged in building the sewer, the claim is apparently against the Authority on its duties under its supervisory power.[1]

The Authority has moved to dismiss the complaint against it for failure to state a claim upon which relief can be granted. The basis for this motion is that the Authority is a municipal corporation and that as a municipal corporation it is immune from a damage suit based on negligence in the construction or supervision of the construction of sewer facilities.

It is conceded by both parties that the Authority is a municipal corporation and I will assume without deciding that it is.

■ Municipal corporations are immune from liability for torts committed in the exercise of their governmental functions, but they are liable for torts committed in the exercise of their corporate function. Flait v. Mayor & Council of Wilmington, 9 Terry 89, 97 A.2d 545; Delaware Liquor Store v. Mayor & Council of Wilmington, 6 Terry 461, 75 A.2d 272 (Super.Ct.). The question before the Court is whether the construction of sewer facilities or the supervision thereof is a governmental or a corporate function of a municipal corporation.

■ The distinction between the two types of functions is explained in Delaware Liquor Store v. Mayor & Council of Wilmington, supra, at page 274:

"The underlying test in distinguishing governmental functions from corporate functions, and, consequently, in determining the liability or nonliability of a municipality for the torts of its officers, agents or employees, is whether the act performed is for the special benefit of the corporate entity or for the common good of all; that is, for the public. Thus, if the damaging action or the negligence of the officers, agents, or employees arises in the execution of a duty which is for the exclusive benefit of the municipality, the municipality is liable, but, if the duty in whole or in part is one imposed upon the municipality as a public instrumentality of the State, the municipality is not liable."

---

1. The contract between the Authority and H. Burton Elliott, Inc., is not a part of the complaint. Therefore, its terms are unknown. Supposedly, the Authority has supervisory powers over Elliott by the terms of the contract. See 61 A.L.R.2d Anno: Municipal Liability—Sewer, p. 887.

In an important dictum, the Court goes on to say:

"Municipal enterprises relating to the preservation of the peace, the care of the poor, the public health, and the prevention of the destruction of property by fire are among those enterprises generally classified in the category of governmental functions."

■ Disposal of sewage is intimately connected with the public health. See Pruett v. Dayton, 39 Del.Ch. 537, 168 A.2d 543. Activities connected with public health are normally categorized as governmental activities. See Hutchinson v. City of Lakewood, 125 Ohio St. 100, 180 N.E. 643, 646. Sewer facilities confer a special benefit upon the communities which they serve, since communities would be adversely affected by malodorous, unsightly and unhealthy accumulation of matter which is disposed of by use of sewers. In a larger sense, an entire region is the beneficiary. The nefarious by-products of filth do not respect municipal boundaries; disease and pollution are quite properly matters of State concern.

■ I conclude that in constructing the sewer or in the supervision thereof, the Authority was acting in its governmental capacity.

This conclusion is reinforced by the language of Section 1406 of Title 16, Delaware Code Annotated, which reads as follows:

"Each Authority created hereunder shall be deemed to be an instrumentality exercising public and essential governmental functions to provide for the public health and welfare * * *".

I arrive at the foregoing conclusion notwithstanding the decisions of Magarity v. City of Wilmington, 5 Houst. 530 (Super. Ct.1879); Harrigan v. City of Wilmington, 8 Houst. 140, 12 A. 779 (Super.Ct.1888); Anderson v. Mayor & Council of Wilmington, 1 Marv. 516, 19 A. 509 (Super. Ct.1889), which were decided under a different rule. See Delaware Liquor Store v. Mayor & Council of Wilmington, supra.[2]

The briefs deal with the Authority as if it was actually constructing the sewer. Ac-

2. In *Magarity*, plaintiff's land was damaged by an overflow of water from a sewer and plaintiff claimed that the City had been negligent in constructing it. The Court's charge to the jury indicated that the City would be liable if the damage arose out of negligence in the performance of a ministerial function, but not liable if it arose out of the performance of a "judicial" function. It described the difference between them as follows:

"The functions of such a corporation are of two kinds, judicial and ministerial. Under the former are classed all those powers which are discretionary merely, such as those exercised in this case, of building the sewer in Monroe Street and raising the grade of Maryland Avenue, formerly the Newport Turnpike. To the extent of deciding upon the site, the size, the inlets and outlets of this sewer, and the height and grade of the bed of the avenue, the powers were purely judicial or mental determinations, subject, as all such are, to the natural infirmity of human judgment. For the existence of such

infirmity, no court anywhere has ever held a party liable, nor for the mere mistakes or errors that resulted from it. The absence or want of sufficient mind to decide right with respect to the affairs of this world at least has never been treated otherwise than as a misfortune purely, involving no civil responsibility." (p. 535).

" * * * Under the powers ministerial are embraced all such acts of the municipal body, through its officers or agents, as are the expression or exercise of discretion in the matter of action; that is, the things done in pursuance or in furtherance of the end to be accomplished by the discretion or judgment are ministerial. Now, there is a wide distinction between judicial or discretionary and ministerial acts, already referred to. No exercise of the human intellect, how perfect soever the training of the mental faculties may have been from the teachings of the best schools and the study of the best forms and methods of human reasoning, can make perfect the conclusions of the mind of any man. When he has done

tually, the complaint indicates that the action against the Authority is based on responsibilities that it had in connection with the construction of the sewer. However, I do not believe for the purposes of decision herein that the distinction is significant. See Hutchinson v. City of Lakewood, 125 Ohio St. 100, 180 N.E. 643, 646.

Motion of defendant Camden-Wyoming Sewer and Water Authority to dismiss the complaint against it is granted.

## SUPPLEMENTAL OPINION

On January 26, 1967, I granted a motion to dismiss the cause of action against The Camden-Wyoming Sewer and Water Authority on grounds of municipal immunity. On March 21, 1967, the Supreme Court of Delaware handed down its decision in Wilmington Housing Authority v. Williamson, et al., (1967), 228 A.2d 782, which decision I felt might have some pertinency to the previously granted dismissal in the instant case. In response to my inquiry on the matter, both sides have submitted letter memoranda, plaintiff's letter concluding with a motion to vacate the previous judgment of the Court and to deny the motion to dismiss. This is the decision on that motion.

In *Williamson,* supra, the Supreme Court decided firstly that the Wilmington Housing Authority was a State agency and secondly that the immunity from tort liability normally enjoyed by State agencies was waived because the legislation pursuant to which the Authority was created empowered it to "sue and be sued". 31 Del.C.Ann. § 4307(a) (5). The statute under which The Camden-Wyoming Sewer and Water Authority was organized likewise empowers it to "sue and be sued". 16 Del.C.Ann. §

1406(6). Plaintiff now argues that the Authority is a State agency;[1] and consequently, its immunity has also been waived.

Plaintiff bases its argument entirely on the criteria elucidated by the Supreme Court in determining the status of the Wilmington Housing Authority in *Williamson,* supra. While the Wilmington Housing Authority and The Camden-Wyoming Sewer and Water Authority do have much in common, it is the differences between them that are determinative of the question now before me. Both Authorities are declared to be "bodies politic and corporate"; their first objectives are declared to be in the public interest by the terms of their enabling statutes; they both have similar powers. Compare 16 Del.C.Ann. § 1406; 31 Del.C.Ann. § 4307. However, whereas a Housing Authority is in essence created by an Act of the State Board of Housing (31 Del.C.Ann. § 4303), a Sewer Authority is created by an Act of the governing body of the affected municipality or municipalities after approval at a public referendum (16 Del.C.Ann. § 1402). A Housing Authority is subject to some supervision by the State Board of Housing (31 Del.C. Ann. §§ 4314, 4315, 4316) and half of the membership of its governing body is appointed by the Governor (31 Del.C.Ann. § 4303). A Sewer Authority is not subject to the control of any State agency and its governing body is selected wholly through municipal processes (16 Del.C.Ann. § 1405). On balance it appears that a Sewer Authority organized pursuant to 16 Del.C.Ann., Ch. 14, is more closely tied to municipal government than is a Housing Authority under 31 Del.C.Ann., Ch. 43. Therefore, it is more properly denominated a municipal agency rather than a State agency.

Motion denied.

the best he can, with the best lights he can collect for the illumination of his mind, he is not responsible for error, and ought not to be. But when he is in the use of powers purely ministerial, that is, executory merely, his course is a perfectly well-defined one, and he must follow

it with due care or submit to the legal consequences of not doing so." (p. 536).

1. In the original briefs, both sides assumed that the Authority was a municipal corporation. Thus, the Court was not presented with this point.